UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHERYL A. MAGEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:07-cv-0438-DFH-TAB |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

ENTRY ON JUDICIAL REVIEW

Plaintiff Cheryl A. Magee seeks judicial review of a final decision by the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income. Administrative Law Judge (ALJ) James R. Norris determined that although Ms. Magee suffered from the severe impairments of degenerative disc disease, degenerative joint disease in her left knee, and obesity, she retained the residual functional capacity to perform sedentary work with some limitations. For the reasons explained below, the ALJ's decision is supported by substantial evidence and is affirmed.

*Background*

Ms. Magee is a 51-year-old high school graduate with some vocational training. R. 362. She was 42 years old on her alleged onset date of May 5, 1999. R. 438. Ms. Magee contends that she is disabled by chronic back pain and

situational depression. R. 361-62. She worked as a quality inspector from 1980 to 1986 and as a quality auditor and quality inspector from August 1987 to July 1999. R. 77. In 1997, Ms. Magee began experiencing severe lower back pain, and she had surgery to correct a herniated disc on August 1, 1997. R. 115-16. She has testified that back pain following the 1997 surgery and a high-stress work environment resulted in the loss of her most recent job on July 16, 1999. R. 275, 363-64.

In May 1999, Ms. Magee was diagnosed with a mood disorder due to chronic back pain, and in April 2004, she was diagnosed with major depressive disorder, panic disorder, and generalized anxiety disorder. R. 207, 638. Her weight increased from 221 pounds in 1998 to 295 pounds in 2006. R. 441. After 1999, she experienced a number of other health problems, including severe sleep apnea, asthma, hypertension, shortness of breath, chest pain, abdominal pain, and knee pain, and she has undergone breast reduction, liposuction, rectocele repair, and gall bladder removal surgeries.

*Procedural History*

Ms. Magee first filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act ("the Act") and supplemental security income under Title XVI of the Act on October 1, 1999, with a protective filing date of September 1, 1999. R. 437. After this application was

denied both initially and upon reconsideration, Ms. Magee requested a hearing before ALJ Norris, which took place on November 30, 2001.

On December 28, 2001, the ALJ determined that Ms. Magee was not disabled under the Act. The Appeals Council denied Ms. Magee's subsequent request for review on June 27, 2002. Ms. Magee then sought judicial review of the Commissioner's decision in this court pursuant to 42 U.S.C. § 405(g). On September 1, 2004, Magistrate Judge William T. Lawrence, sitting by consent of the parties under 28 U.S.C. § 636(b), reversed and remanded Ms. Magee's case to the Commissioner for several reasons. First, the ALJ failed to address conflicting assessments of Ms. Magee's ability to stoop and bend. Second, he did not cite any medical evidence to support his conclusions regarding Ms. Magee's muscle atrophy and weakness. Finally, he did not include his determination that Ms. Magee suffered from mild deficits in concentration, persistence, or pace in hypothetical questions he posed to the vocational expert during the administrative hearing.

While her initial petition for review in this court was pending, Ms. Magee filed a new application for disability insurance benefits under Title II of the Act on January 5, 2004. She declined to file a new application for supplemental security income at that time, but she continued to pursue supplemental security income as part of her original application.

Ms. Magee's new application was denied both initially and upon reconsideration. She requested a hearing, which ALJ Norris again conducted on August 15, 2005. ALJ Norris consolidated both of Ms. Magee's applications and again determined that she was not disabled under the Act on April 19, 2006. The Appeals Council subsequently denied her request for review, rendering the ALJ's decision the final decision of the Commissioner. Ms. Magee now seeks judicial review of the Commissioner's most recent decision.

*Framework for Determining Disability*

To be eligible for disability insurance benefits or supplemental security income, Ms. Magee must establish that she suffered from a disability as that term is defined by the Act. Under the Act, a disability is the inability to engage in any substantial gainful activity due to any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

An individual is disabled only if her physical or mental impairment is of such severity that she is not only unable to engage in her previous work, but also cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area where she lives, whether a specific job vacancy exists for her, or whether she

-4-

would be hired if she applied for work.  42 U.S.C. § 423(d)(2)(A).  This is a stringent standard.  The Act does not allow benefits to be awarded in cases of partial disability and does not contemplate degrees of disability.  *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985).  Even a claimant with substantial impairments may not be entitled to benefits.

In determining for the second time that Ms. Magee was not disabled, the ALJ utilized the five-part test of 20 C.F.R. §§ 404.1520 and 416.920:

1. Is the individual currently employed? If so, she is not disabled.

2. Is the individual's impairment severe enough to significantly limit her ability to engage in basic work activities? If not, she is not disabled. "Basic work activities" are defined by 20 C.F.R. § 404.1521(b) as the abilities and aptitudes to do most jobs.

3. Is the individual's impairment listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1?  If so, she is disabled.

4. Is the individual able to perform her past relevant work? If so, she is not disabled.

5. Is the individual able to perform any other work? If so, she is not disabled.

The ALJ determined that Ms. Magee satisfied step one because she had not engaged in substantial gainful activity since her alleged onset date.  R. 438.  The ALJ found that Ms. Magee satisfied step two because objective medical evidence demonstrated that she was severely impaired by lumbar and cervical degenerative disc disease, degenerative joint disease in her left knee, and obesity.  R. 439.  However, the ALJ concluded that Ms. Magee's claimed mental impairment had no

-5-

more than a minimal effect on her physical or mental abilities to perform basic work activities.  R. 441.

Next, the ALJ found that Ms. Magee failed to satisfy step three because she had not established that her impairments met or equaled in severity any impairment contained in the Listing of Impairments.  *Id.*  At step four, the ALJ assessed Ms. Magee's residual functional capacity based on the relevant objective medical evidence and other evidence in the record, in addition to assessing her subjective complaints of pain.  The ALJ determined that Ms. Magee retained the residual functional capacity to perform sedentary work subject to limitations on her ability to climb, balance, stoop, kneel, crouch, and crawl.  R. 449.  The ALJ then concluded that objective findings in the case failed to support Ms. Magee's contention that she was unable to perform her past relevant work as a quality auditor.  *Id.*

### *Standard of Review*

This court must uphold the Commissioner's decision if the findings of fact are supported by substantial evidence and no error of law was committed. 42 U.S.C. § 405(g); *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000). Substantial evidence is evidence that "a reasonable mind would accept as adequate to support a conclusion." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).  To determine whether substantial evidence exists to support the

Commissioner's decision, the court should review the record as a whole but should not attempt to substitute its judgment for the ALJ's judgment by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Cannon*, 213 F.3d at 974. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion*, 108 F.3d at 782.

## *Discussion*

Ms. Magee argues that substantial evidence did not support the ALJ's decision for two reasons. First, she asserts that the ALJ violated the law of the case upon remand. Second, she contends that substantial evidence does not support the ALJ's step four decision because she could not perform her past relevant work, either as she actually performed it or as it is generally performed in the national economy, and also because the vocational expert improperly used a "generic" job classification.

I.   *Law of the Case*

   A.   *Hypothetical Questions Posed to the Second Vocational Expert*

Ms. Magee contends that the ALJ violated the law of the case when he omitted a limitation on mild deficits in concentration, persistence, or pace from his hypothetical question to vocational expert Ray Burger during the second administrative hearing on August 15, 2005.  Pl. Br. 10.

Under the law of the case doctrine, "once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case."  *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991).  This doctrine applies to judicial review of administrative decisions and "requires the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart."  *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998).  However, an exception to this rule may exist if substantial new evidence has been introduced after the first review, a higher court has decided a relevant case after the first review, or the second reviewing court is convinced that the decision of the first court was clearly erroneous.  *Key*, 925 F.2d at 1060.

To determine whether the ALJ violated the law of the case on remand, the court must carefully consider the scope of the district court's remand order.  *Id.* at 1061, citing *Angevine v. Sullivan*, 881 F.2d 519, 522 (7th Cir. 1989).  During

the first administrative hearing on November 30, 2001, the ALJ posed several hypothetical questions to the vocational expert, Michael Blankenship, that did not incorporate mild deficits in concentration, persistence, or pace. R. 402-05. However, in his December 28, 2001 decision, the ALJ found:

> The evidence demonstrates that the claimant experiences only a mild restriction of her activities of daily living and mild difficulties in maintaining social functioning related to her mental impairment. She has only *mild deficits in concentration, persistence, or pace*; and she has never had an episode of deterioration or decompensation in work or work-like settings.

R. 21 (emphasis added).

In remanding the ALJ's first decision, Judge Lawrence held:

> Because the ALJ failed to include his determination that Magee-Romans had mild deficits in concentration, persistence, or pace, in his hypothetical to the [vocational expert], substantial evidence does not support his conclusion that Magee-Romans could perform her past relevant work as a quality auditor, a quality inspector, and an injection molder.

R. 487-88. Ms. Magee now contends that ALJ Norris ignored this principle on remand and thus violated the law of the case. Pl. Br. 10-12.

Failure to incorporate a claimant's limitations in a hypothetical question posed to a vocational expert may require remand for further proceedings. *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003). During the August 15, 2005 administrative hearing, the ALJ posed a hypothetical question to the second vocational expert, Mr. Burger, that did not incorporate limitations on Ms. Magee's

-9-

concentration, persistence, or pace. R. 1116-17. However, the ALJ also did not incorporate these limitations in his April 19, 2006 opinion and concluded, "She does not have deficiencies of concentration, persistence, or pace . . . ." R. 441. In reaching this conclusion, ALJ Norris considered Ms. Magee's testimony at the first administrative hearing and two mental status examinations, including her most recent examination, conducted in 2004:

> At that time, she confirmed that she was able to attend to her personal hygiene and household maintenance activities. For enjoyment, she watches television, plays cards, and reads. Her mood was moderately to severely depressed and her affect was appropriate. The examiner described her as cooperative, attentative [sic], and the results of her mental status examination were within normal limits.

R. 440.

In addition, ALJ Norris provided an entirely new residual functional capacity assessment based on an updated survey of the entire record, including testimony from two new medical experts and a new vocational expert at the 2005 hearing. R. 442-49. Judge Lawrence's remand order required only that the ALJ include limitations he found to be fully supported by the record in hypothetical questions posed to the vocational expert. See *Kasarsky*, 335 F.3d at 544. Here, the ALJ found that Ms. Magee's mental impairment had "no more than a minimal effect on her physical or mental ability to perform basic work activities," R. 441, a finding that was reflected in his hypothetical questions to the new vocational expert.

In addition, substantial new evidence introduced after the first review – including the results of Ms. Magee's 2004 mental status examination and the testimony of the new vocational and medical experts during the 2005 administrative hearing – supported the ALJ's factual findings and undermined Ms. Magee's reliance on the law of the case doctrine. See *Chicago & North Western Transportation Co. v. United States*, 574 F.2d 926, 930-31 (7th Cir. 1978) (explaining that substantial new evidence may render doctrine inapplicable). The ALJ was entitled to reassess the evidence about any deficits in concentration, persistence, or pace in light of the new evidence presented at the second administrative hearing.

### B.   *Vocational Expert Blankenship's Testimony*

Ms. Magee also contends that the ALJ was prohibited from relying in any manner on vocational expert Michael Blankenship's testimony from the first hearing. Pl. Br. 11. This argument mischaracterizes Judge Lawrence's remand order, which prohibited reliance only upon the ALJ's impermissible hypothetical questions and Mr. Blankenship's answers to them. The ALJ relied on neither of these but rather focused on Mr. Blankenship's determination of the Specific Vocational Preparation (SVP) levels of Ms. Magee's past relevant work as a quality auditor, quality inspector, and injection molder. That issue was not related to the incomplete hypothetical questions or his answers to them. R. 402, 448.

Because the ALJ complied with the remand order by including all of the findings of fact incorporated in his April 19, 2006 opinion in his hypothetical question to Mr. Burger, he did not violate the law of the case by omitting limits on Ms. Magee's concentration, persistence, or pace. In addition, the remand order did not prohibit the ALJ from utilizing Mr. Blankenship's testimony altogether.

II.  *Step Four Finding*

Next, Ms. Magee contends that substantial evidence does not support the ALJ's step four finding that her "impairments do not prevent her from performing her past relevant work as quality auditor, as she generally performed it and/or as performed in the economy." R. 449.  A claimant is not disabled at step four if she can perform her past relevant work either as she actually performed it or as it is generally performed in the national economy.  20 C.F.R. § 404.1560(b)(2).  Ms. Magee bears the burden of demonstrating that she cannot perform her past relevant work.  *Arbogast v. Bowen*, 860 F.2d 1400, 1403 (7th Cir. 1988).

### A.     *As Actually Performed*

First, Ms. Magee argues that she could not perform her past relevant work as a quality auditor as she actually performed it, relying on her October 18, 1999 Vocational Report in which she noted that when working as a quality auditor and quality inspector, she was occasionally required to lift items weighing up to 50 pounds.  R. 78.  Such work would be defined as medium work under 20 C.F.R. § 404.1567(c).

Mr. Blankenship testified in the first administrative hearing that Ms. Magee's past relevant work as a quality auditor and quality inspector was performed at the sedentary and light exertional levels, R. 402, and Mr. Burger similarly testified in the second hearing that her past relevant work in these positions was sedentary or light work.  R. 1105-06.  The vocational experts' testimony constituted substantial evidence sufficient to support the ALJ's finding that Ms. Magee could perform her past relevant work as a quality auditor.  R. 448-49.

Ms. Magee correctly states that "an ALJ may not ignore an entire line of evidence that is contrary to her findings."  *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).    However, Ms. Magee's counsel did not assert at either administrative hearing that her past relevant work as a quality auditor and quality inspector was of a medium exertional level, even when faced with an opportunity

to question the vocational experts about this supposedly crucial piece of evidence. See R. 405-07, 1106. "When an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits." *Glenn v. Secretary of Health & Human Services*, 814 F.2d 387, 391 (7th Cir. 1987).

Because the ALJ was entitled to assume that Ms. Magee had presented her strongest case for benefits, substantial evidence supports his decision that she could perform her past relevant work as a quality auditor as it was actually performed.

B.   *As Generally Performed in the National Economy*

Ms. Magee also argues that she could not have performed her past relevant work as a quality auditor as it is generally performed in the national economy because she did not have past relevant work as a quality auditor. Pl. Br. 13. She asserts that her past relevant work was a composite job of quality auditor and quality inspector that has no direct analog in the national economy. *Id.*

An ALJ may utilize the *Dictionary of Occupational Titles* to define many jobs as they are generally performed in the national economy. Social Security Ruling 82-61. However, the ALJ should evaluate composite jobs encompassing elements

of two or more job descriptions as defined in the *Dictionary of Occupational Titles* according to the particular facts of each case. *Id.*[1]

During the first administrative hearing, Mr. Blankenship characterized Ms. Magee's past relevant work as three separate positions of quality auditor, quality inspector, and injection molding inspector, and he stated that his testimony was based on the *Dictionary of Occupational Titles*. R. 402, 405. During the second administrative hearing, Mr. Burger characterized Ms. Magee's past relevant work as quality auditor and quality inspector positions, and he also stated that his testimony was consistent with the *Dictionary of Occupational Titles*. R. 1105, 1117. Ms. Magee has described these two positions as similar to each other, but with slightly different requirements and pay:

> ALJ: And Mr. Burger, I believe that the only job in the last 15 years has been as an inspector in a factory. Is that correct?
>
> VE: I saw inspector and I made a note here for where there's some other jobs like quality auditor, and quality inspector, and –
>
> CLMT: Yeah, it's all rolled into one, pretty much.
>
> VE: All rolled into one –
>
> CLMT: Yeah. Just kind of a level up paywise and duty.

R. 1105.

---

[1] Social Security Rulings are binding on the Social Security Administration. *Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999); *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991); 20 C.F.R. § 402.35(b)(1).

Ms. Magee never characterized her past relevant work as a "composite" job incapable of comparison to other positions in the national economy during either of her administrative hearings. She also did not identify any specific reason why her past relevant work as a quality auditor and quality inspector differs so significantly from similar jobs defined in the *Dictionary of Occupational Titles* that her work in these positions has no analog in the national economy. Substantial evidence supports the ALJ's decision that Ms. Magee could perform her past relevant work as a quality auditor as it is generally performed in the national economy.

### C. *"Generic" Classification*

Finally, Ms. Magee contends that Mr. Burger utilized an improper "generic" occupational classification when he testified that she could still perform "the inspector jobs that she performed at the sedentary level." Pl. Br. 14-15. A step four decision made on the basis of "whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job" may be invalid:

> Finding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable.
>
> While "delivery jobs," or "packaging jobs," etc., may have a common characteristic, they often involve quite different functional demands and duties requiring varying abilities and job knowledge.

Social Security Ruling 82-61.

Ms. Magee's reliance on this Social Security Ruling is not persuasive. Mr. Burger's use of the term "inspector jobs" alone might have constituted an improper classification of Ms. Magee's past relevant work, but he did not use the term in isolation. He testified that she retained the residual functional capacity to perform "the inspector jobs that she performed at the sedentary level." This statement refers specifically to Ms. Magee's past relevant jobs as a quality auditor and quality inspector, not to a "generic" class of inspector jobs.

In addition, Social Security Ruling 82-61 states only that the use of such terms "is likely to be fallacious and unsupportable," allowing courts to analyze whether the use of a "generic" term is impermissible in a particular case. Use of such a term in a step four ruling does not automatically render it invalid. In this case, Mr. Burger did not use the term "inspector jobs" generically. He used it to refer specifically to Ms. Magee's past relevant work as a quality auditor and quality inspector.

*Conclusion*

For the foregoing reasons, the ALJ's decision denying disability insurance benefits and supplemental security income is supported by substantial evidence and is affirmed. Final judgment will be entered accordingly.

-18-

So ordered.

Date: April 23, 2008

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

J. Frank Hanley, II
lawoffices@jfrankhanley.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov